December, 1824.

## Taylor *against* Casey.

After verdict,
words charging
homicide gene-
rally, shall be
deemed sufficient
to sustain the ac-
tion.

THIS was an action on the case for slanderous words.
The declaration contained four counts. In the first, the
words charged were, " you, damned rascal, have killed my
brother, and I will kill you." In the second, " you have
murdered my brother." In the third, " he has killed my
brother." And in the fourth, " he has murdered my bro-
ther." Each count containing the usual matter of induce-
ment, colloquium, innuendo, &c. Plea, not guilty; verdict,
and judgment for the plaintiff. The defendant brought his
writ of Error to this Court, and assigned as Error—that in
the first and third counts in the declaration a good cause of
action is not shewn, and there was a general verdict.

*H. G. Perry* for plaintiff in Error.—If there be a good
and a bad count in the declaration, and a verdict on all the
counts, the damages cannot be applied to the good count.
The Court below must render judgment on the finding of
the Jury. In the assessment of damages, the Jury may have
regarded the words which were not actionable as much as
those which were. The Court could not conclude that the
damages were assessed on the good count only, but was

bound to presume to the contrary. The Circuit Court ren-
dered a judgment against the plaintiff in Error, for a cause
which, according to the law of the land, was not actiona-
ble.

The words as charged in the 1st and 3d counts are not
actionable. Every killing is not murder. One human be-
ing may sometimes be killed by another without crime, and
even without the slightest departure from moral rectitude.
" He has killed my brother," and "he has murdered my bro-
ther," are to every apprehension, charges. of very different
import.

He -cited 1 Term R. 151. 2 Lord Raymond, 825. 1
Salk. 24. Willis' Rep. 443. 2 Salk. 696. 8 Mod. 270.
6 Term R. 691. 5 Coke's Rep. 108. 10 Coke, 131. 11
Coke, 45, 50. 3 Wilson R. *Onslow* vs. *Horn.* 8 John. 109.
1 Caine's Rep. 347. 2 Johnson's Cases, 17. 1 Sellon, 501.
2 Tidd, 831.

*Gordon* for defendant in Error.—As to the principle that
when there is a good and a bad count, and a general verdict
for damages, a rule has obtained in England which the cases
shew to have been without reason, and to have excited the
regret of the Courts which have afterwards acquiesced in
it. Doug. 730. In the United States this rule has some-
times been acquiesced in, and at other times not, as in the
Courts of *Connecticut* and *South Carolina.* In *Virginia* it
has been altered by Statute, and where it has prevailed it is
an anomaly in jurisprudence. I contend that the Excep-
tion on principle would not have been good on general de-
murrer. If in the same count words actionable and words
not actionable had been charged, the declaration must have
been good. Willis' R. 443. Where is the distinction be-
tween that case and this? The Jury in the one case, as
much as in the other, are to be presumed to have consider-
ed the words not actionable in their assessment of damages.
But the words in all the counts are in themselves ac-
tionable. Every killing of one human being by another is
prima facie murder ; and it rests with the party charged to
shew the circumstances of justification or extenuation. The
rule, that words shall be taken *in mitiori sensu,* has long
since been exploded. The decisions of this Court declare
that it is not the law. *Perdue* vs. *Burnett.* *Coburn* vs.
*Harwood.* (a) The verdict here shews that the words were (a) *-ante,* 188—93.
spoken with malice, and with intent to subject the plaintiff
in the action to the pains and penalties provided by law
against persons guilty of murder. By our Statute of jeofails,
after verdict no defects are available but such as would have

been good on general demurrer. Laws Ala. 454. On ge-
neral demurrer, this objection would not have been good.
1 Wilson, 252, 253. 2 Wilson, 321. 3 Saund. 279, n. 14.
1 Saund. 286. 1 Hen. and Mun. 361. He also cited as to
the several positions, Foster's C. Law, 255. 4 Bl. Com. c.
14. 1 Com. D. 250, and references. 1 Hawk. P. C. c. 20, s. 2.
12 John. 239. Cowper, 276. Peake's Evidence, 346.
2 Wilson, 114. 7 Bac. Ab. 529. 6 John. 83, 9 East. 93.
Kirby's Rep. 12. 1 Wash. 150. 5 Bos. and P. 335. 2
John. 239. 1 Johnson's Cases, 279.

*Taylor
v.
Casey.*

 *Thorington* on the same side.—In support of the posi-
tions taken by Mr. *Gordon*, I will only add that from the
principle which determines what words are in themselves
actionable, all words charging the commission of homicide,
must be so unless it appear that in the conversation in which
they were uttered they were so explained as to lead the
hearers to the conclusion that the killing, as charged by the
words, could not be a criminal offence. Every charge of
homicide tends to bring the party charged into danger, if not
of punishment at least of prosecution. The declaration
here avers that all the words charged were maliciously
spoken, with intent to subject the plaintiff in the action to
punishment for the crime of murder, and by their verdict
the Jury have said that the whole declaration is true. How
then from the Record can the Court now say that the words
in either of the counts do not charge the plaintiff with crime,
and naturally tend to bring him into danger of prosecution
for it.

 *Clay* in reply.—As to the position taken by Mr. *Perry*,
that in an action of this description, where there are good
and bad counts, and entire damages, the authorities in the
books are uniform ; and unless this Court should conclude
that the established common law doctrine is not to govern
in this State, this position must, I conceive, be sustained.
 We should probably lose nothing by admitting, that if the
words *prima facie* impute crime, they are actionable. Do
the words in the first and third counts, according to the sense
in which the world at large understand them, impute the
crime of murder ? To me it would seem that the hearers
would generally understand by them that the killing was
without felonious intent, justifiable or excusable, much more
naturally than they could infer that it was murder. No con-
viction could be had on an indictment merely charging the
act of killing another—malice or felonious intent must be
averred. Neither in the first or third counts does it appear

by the innuendo, that the defendant in the action intended to impute to the plaintiff the crime of murder ; nor if it did, could the innuendo add to, or extend the charge. The cases of *Coburn* vs. *Harwood,* and *Holt* vs. *Colfield,* (6 Term, 691,) cited on the other side, prove this. As to the case relied on from 12 Johnson's Reports, 239, it shews that other words were proved than those charged in the declaration, and the decision of the Court there was on a motion for a new trial, and as appears to me has no application to this question. Our Statute of jeofails cannot help the defendant in Error ; for if the words stated in the first and third counts are not in themselves actionable, the title shewn by each of these counts is defective, and a verdict could not make it good. The authorities cited by Mr. *Gordon* prove that a general demurrer to either must have been sustained.

Judge *Minor* delivered the opinion of the Court.

In the examination of this case, we have first to enquire whether the words, as stated in the first and third counts of the declaration, are in themselves actionable ? To shew that they are not, the Counsel for the plaintiff in Error have relied on the authority of cases where, from the words spoken, the imputation of perjury was attempted to be adduced ; and have contended that as the words " he is forsworn," " he has taken a false oath," and the like, will not support an action, unless from the colloquium and innuendo it appear that the charge was made with reference to testimony given on an oath lawfully administered in the course of judicial proceeding, and on a material matter, &c. So in the case before us, as the words do not of themselves, or by the proper effect of the innuendo, set out a charge of felonious homicide, they are not to be so understood. There is an obvious difference between these two classes of slanderous words. The legal idea of perjury necessarily includes the several circumstances constituting the offence. The charge of being forsworn, or of having taken a false oath, unless connected by some necessary reference to the other circumstances constituting the offence, does not to common apprehension produce the conclusion that a perjury has been committed ; nor would it be the probable tendency of such a charge to subject the person against whom it was made to the danger of criminal prosecution. But every homicide is judicially, as well as to the common apprehension of mankind, deemed felonious unless the circumstances of justification or excuse appear. By the verdict in the Record, it appears that the defendant publicly, falsely, and maliciously, said to the plaintiff, " you have killed my bro-

Taylor
v.
Casey.

ther, and I will kill you." If these had been the only words spoken by the defendant to the plaintiff, and the testimony could afford nothing to authorize a more technical statement of felonious homicide, their tendency to subject him to the danger of prosecution for a crime, and to injure his reputation, may yet have been as certain as if they had charged the offence with all the formalities of an indictment.

It is a principle too well settled by the uniform tenor of modern authorities, now to admit of doubt, that in actions of this nature words are now considered by Courts, as they always ought to have been, in the plain and popular sense in which the rest of the world naturally understand them. But even during the period of English jurisprudence, when the rule prevailed that in actions for defamation the words were to be understood *in mitiori sensu*, it seems to have been held that an action lies for saying to plaintiff " thou hast killed J. S. ;" for, although the killing may have been as an executioner or by accident, the words in their usual acceptation mean a felonious killing. (6 Bac. Ab. 234. Wilson's Ed. 1 Roll. Ab. 72.) This seems to be a case in point, and the reasons assigned afford a conclusive answer to the main argument for the plaintiff in Error. Indeed, all the older authorities which I have had an opportunity of consulting, shew words such as these here charged to have been held actionable. Nor in any of the later cases cited does it appear that the contrary doctrine has been held. Cro. Eliz. 823. Cro. Car. 277. Cro. Jac. 423—162. Ld. Raymond, 959. 1 Com. Dig. 250.

In the cases of *Coburn* vs. *Howard*, and *Perdue* vs. *Burnett*, (a) the above-mentioned principles as to the construction of words were recognized. In the case *Perdue* vs. *Burnett*, this Court held that the words " you have altered the marks of four of my hogs," having been ascertained by the verdict to have been spoken falsely and maliciously, and with intent to subject the plaintiff to the danger of legal punishment, were actionable without an averment of special damage. We are unanimously of opinion that the judgment of the Circuit Court must be affirmed.

*(a) ante, 93.*
*238.*

Judge *Gayle* having been of Counsel, gave no opinion.